**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK PHILLIPS; REBECCA PHILLIPS,<br><br>  Plaintiff,<br><br>  v.<br><br>FIRST HORIZON HOME LOAN CORPORATION; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.; JAMES WOODALL; THE MORTGAGE LAW FIRM, PLC; MAX DEFAULT SERVICES CORPORATION; FEDERAL NATIONAL MORTGAGE ASSOCIATION; CARMEN RIVERA,<br><br>  Defendants. | 3:12-cv-00013-RCJ-WGC<br><br>**ORDER** |

Before the Court is a wrongful foreclosure action alleging deceptive foreclosure practice by parties not authorized to foreclose on Plaintiffs' property. Plaintiffs now motion the Court for partial summary judgment (ECF No. 39), and Defendants countermotion for summary judgment (ECF No. 41). For the reasons stated herein, the Court denies Plaintiffs' and Defendants' Motions for Summary Judgment.

**I.    FACTS AND PROCEDURAL HISTORY**

On April 11, 2007, Plaintiffs Mark and Rebecca Phillips executed a note in the amount of $266,840 secured by a deed of trust (the "Deed of Trust") to the property located at 2185 Evergreen Park Drive, Reno, Nevada 89521 (the "Property"). (Deed of Trust, ECF No. 40-4, at 1-2). The Deed of Trust listed First Horizon Home Loan Corporation as lender, Capital Title Company of Nevada as trustee, and MERS as nominee. (*Id.* at 1-2).

Plaintiffs were unable to make the payments due on the loan secured by the Deed of

Trust on or about March 2010. (Amended Compl., ECF No. 28, at 5).  Max Default Services Corporation ("Max Default") then recorded a notice of default on July 1, 2010, claiming to be the trustee of the Deed of Trust. (Notice of Default, ECF No. 40-5, at 2-4). On July 8, 2010, Federal National Mortgage Association ("Fannie Mae") substituted Max Default as trustee. (Appt. Successor Trustee, ECF No. 40-5, at 5-6).  On July 30, 2010, MERS assigned all beneficial interest in the Deed of Trust to Fannie Mae. (Assignment, ECF No. 40-6, at 1-2).  However, this assignment was not recorded with the Washoe County Recorder until June 10, 2011. (*Id.*).

On November 1, 2010, a certificate from the State of Nevada Foreclosure Mediation Program was issued. (Certificate, ECF No. 40-7, at 1).  This certificate was recorded a year later on November 14, 2011. (*Id.*).  James Woodall executed a notice of trustee's sale on November 1, 2011, which was recorded on November 14, 2011. (Notice of Sale, ECF No. 40-7, at 2-3).  On November 7, 2011, Fannie Mae executed a substitution of trustee, formally substituting James Woodall, The Mortgage Law Firm, and Max Default as trustees of the Deed of Trust. (Sub. Trustee, ECF No. 40-6, at 3-4).  On November 28, 2011, the Property was sold to Fannie Mae in satisfaction of the unpaid debt on the loan, which amounted to $289,472.56. (Deed Upon Sale, ECF No. 40-8).

Plaintiffs filed a pro se complaint in Nevada state court on November 28, 2011 against First Horizon Home Loan Corporation, MERS, James Woodall, The Mortgage Law Firm, Max Default, Fannie Mae, and Carmen Rivera. (Compl., ECF No. 1-1, at 1).  The complaint asserted two causes of action, the first for quiet title and the second for intentional interference with a prospective economic advantage. (*Id.* at 8-10). The dispute was then removed to this Court on January 9, 2012 under diversity jurisdiction. (Pet. for Removal, ECF No. 1, at 2).

Defendants Fannie Mae and MERS filed a motion to dismiss the complaint for failure to state a claim along with a motion to expunge the lis pendens on the Property on January 19, 2012. (Mot. to Dismiss, ECF No. 5; Mot. to Expunge ECF No. 6).  Plaintiffs then filed three motions on January 27, 2012: (1) a motion to amend the complaint; (2) a motion for

partial summary judgment; and (3) a motion to remand the action to state court. (Mot. to Amend, ECF No. 11; Mot. for Partial Summ. J., ECF No. 12; Mot. to Remand, ECF No. 13). The amended complaint alleges four causes of action, including: (1) quiet title; (2) wrongful foreclosure; (3) negligence; and (4) deceit. (Am. Compl., ECF No. 28, at 10-13). The amended complaint further removes First Horizon Home Loan Corporation and Carmen Rivera as defendants. (*Id.*).

The Court denied Defendants' motions to dismiss and to expunge lis pendens on the basis they were moot as Plaintiffs had amended the Complaint. (Order, ECF No. 27). The Court also denied Plaintiffs' motions for partial summary judgment and to remand, but granted their motion to amend the Complaint. (*Id.*).

Before the Court now are Plaintiffs' Motion for Partial Summary Judgment, and Defendants Motion for Summary Judgment.

## II.   LEGAL STANDARDS

A motion for summary judgment is a procedure that terminates, without a trial, actions in which "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(a). The party seeking summary judgment always bears the initial burden of persuasion to the court. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must identify those parts of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Id.*  "The court need consider only cited material, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).  The principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Id.* at 324.   Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* In determining summary judgment, a court uses a burden-shifting scheme:

When the party moving for summary judgment would bear the burden of proof

>at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense at trial, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

### III. DISCUSSION

In their amended Complaint, the Phillips allege four claims: 1) a wrongful foreclosure claim against Fannie Mae; 2) A quiet title claim against Fannie Mae; 3) a negligence claim against Woodall, the Law Firm, and Max Default; and 4) a Fraud claim against Max Default and MERS.

Plaintiffs move for partial summary judgment on their claims of Wrongful Foreclosure and Eviction and Quite Title of Declaration of Rights, "but only where those causes of action rely on the deficiency of status of Max Default Services Corporation as trustee." (Mot. Partial Summary J., ECF No. 39, at 2). Plaintiffs posit to the Court "whether a non-judicial foreclosure can validly be effectuated by a party who is not trustee, but who is legally a stranger to the note and deed of trust." (*Id.*). The applicable statutes on foreclosure in 2010 provide that "The power of sale must not be exercised, however, until: [t]he beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded . . . a notice of a breach and the election to sell . . . ." N.R.S. § 107.080 (2)(c). Thus, the beneficiary, the trustee, or a successor in interest may commence a non-judicial foreclosure proceeding provided other notice requirements are met. The statutes specifically state "to secure the performance of an obligation or the payment of any debt, a power of sale is hereby conferred upon the trustee to be exercised after a breach of the obligation . . . ." N.R.S. § 107.080 (1). Therefore, it is typically the trustee who executes the NOD and NOS in a non-judicial foreclosure.

Plaintiffs correctly assert that a party must first ascend to the position of trustee before it can exercise the rights of a trustee. Because the NOD was filed by Max Default on July 1, 2010, which was arguably prior to the notarized substitution of trustee dated July 8, 2010, Plaintiffs argue Max Default had no authority to execute the NOD. Defendants assert the trustee, Max Default, was the properly appointed trustee at the time of the foreclosure proceedings because the substitution was dated June 28, 2010. However, the Court finds conflicting dates in the notarizing and recording of the substitution of trustee in relation to this purported substitution date of June 28, 2010. Defendants assert that the notarization, which occurred more than a week later, is simply a memorial of the actual

appointment on June 28, 2010.  The Court does not agree, and finds that the signature of the beneficiary authorizing the substitution is the legally recognized execution of the substitution that the notary is swearing to have witnessed under penalty of perjury.  The signature within the document purporting the authority to appoint a substituted trustee is the effective instrument which provides the rights and powers to that newly appointed entity.  Regarding the appointment or substitution of a trustee, the signatures in the document represent the legal authority to its time and contents, and the notary is the legal recognition of the signatures therein.  This issue is of no small consequence due to all the recent foreclosures which have and are occurring in an automated fashion in Nevada.  The substitutions of trustees and assignments of beneficiaries of deeds often occur several times in the course of a foreclosure.  Due to the often conflicting dates of these substitutions, and whether the trustee was in authority to proceed with a non-judicial foreclosure, Nevada legislators recently added a statutes addressing the problem.  Nevada Revised Statute § 107.028 details qualifications, limitations on powers, and the required notice of substituted trustees and became effective July 1, 2011.  Although not relevant to this first NOD in this action, its language is applicable to the latter substitution which will be analyzed in this Order.  Among other requirements, it specifically states that the appointment or substitution of a trustee is not effective until it is recorded in the county in which the real property is located. N.R.S. 107.028(4).

Nevada law requires that the beneficiary or trustee first executes and records a Notice of Default and of the Election to Sell prior to a trustee exercising its power of sale.  As mentioned above, Defendant, Max Default, filed the NOD on July 1, 2010. (NOD, ECF No. 40-5, at 2-3).  The first Appointment of Successor Trustee was executed on July 8, 2010. (Appt. Succ. Trustee, ECF No. 40-5, at 4).  Thus, Max Default was not legally authorized to execute the NOD, as it was not as yet the trustee.  Further, the Court finds even more conflicts regarding the assignment of the deed of trust and who was the actual beneficiary at this time.  In both the NOD and the Appointment of Successor Trustee, Max Default is named as the trustee who is acting for the benefit of Fannie Mae.  The NOD was executed by Max Default on July 1, 2010.  The Appointment of Successor of Trustee was

executed on July 8, 2010 by Fannie Mae. However, contrary to Defendants claims, but according to documentation in exhibits, Fannie Mae was not assigned the deed of trust until July 30, 2010. (Corporate Assign. Deed Trust, ECF No. 40-6, at 1-2). Thus, Max Defaults substitution as trustee was not executed by the beneficiary of the deed.

At some point, it appears Fannie Mae began the foreclosure process anew. As mentioned above, the foreclosure statutes have been amended and even some additional requirements are required in a non-judicial foreclosure. On November 7, 2011, Fannie Mae executed another Substitution of Trustee naming Max Default and James Woodall, The Mortgage Law Firm, LLC, as trustee. (Sub. Trustee, ECF No. 40-6, at 3-4). The addition of James Woodall is likely due to NRS 107.028 which mandates "The trustee under a deed of trust must be: An attorney licensed to practice law in this state; . . . ." NRS 107.028(1)(a). On November 14, 2011, Max Default recorded the certificate of the state mediation foreclosure program purporting to indicate that no request for mediation was made by Plaintiffs. (Certificate, ECF No. 40-7, at 1). However, this certificate was more than a year old and dated November 1, 2010. The same day, November 14, 2011, Max Default recorded the Substitution of Trustee and a Notice of Trustees Sale. (Notice of Sale, ECF No. 40-7, at 2-3). The NOS stated that the Property would be sold at public auction on November 28, 2011. The property was sold to Fannie Mae on November 28, 2011.

Defendants failed to execute a valid NOD prior to the NOS. The statutes are very clear about required notice prior to foreclosure. "The power of sale shall not be exercised until: the beneficiary, the successor in interest of the beneficiary, or the trustee first executes and causes to be recorded . . . a notice of the breach and of the election to sell . . . ." N.R.S. § 107.080; *see also* N.R.S. § 107.086 (additional requirements for owner-occupied housing). In other words, the steps in a non-judicial foreclosure sale commence with the execution of a NOD. *See Id.* Then, depending on whether mediation is requested, the NOS may be executed, followed by the actual auction and sale of the property. The Court finds Defendants did not follow statutory procedures in their attempt to foreclose on Plaintiffs mortgage. Defendants assert there was no wrongful foreclosure. Citing to an order from this Chamber, Defendants claim, "[a]s long as the note is in default and the

7

foreclosing trustee is either the original trustee or has been substituted by the holder of the note or the holder's nominee, there is simply no defect in foreclosure." *Gomez v. Countrywide Bank*, FSB, No. 09-1489, 2009 WL 3617650, at *2 (D. Nev. October 26, 2009). This is true, but Plaintiffs' contention is with the unauthorized trustee, not whether the note was in default.

The facts support the allegation that Plaintiffs have defaulted on their mortgage note. And, Plaintiffs have not contented otherwise. Plaintiffs have continually remained in possession of the Property since the commencement of these foreclosure proceedings and, apparently, have not made any payments towards the debt on the Property since March of 2010. Clearly there is a note that is in default and a beneficiary that is entitled to the security of the mortgage, or payment of the note. Defendants have failed to provide any evidence to prove they were authorized to proceed with the foreclosure in July of 2010. Yet, the fact remains that Plaintiffs have not disputed the allegations of their default for non payment. A foreclosure is not wrongful if the note was in default. *See Gomez,* FSB, No. 09-1489, 2009 WL 3617650, at *2. The Court finds that at some time during the process Defendants had the authority to foreclose, they just didn't follow the rules. What remains to be determined is if there are any damages, statutory or otherwise, that Plaintiffs are entitled to for Defendants wrongful actions. If so, are any of those damages offset by Plaintiffs continued possession and use of the Property during the past three years?

For the reasons stated above, at this time the Court denies Plaintiffs Motion for Partial Summary Judgment and denies Defendants Countermotion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED Plaintiffs' Motion for Partial Summary Judgement (ECF No. 39) is DENIED. It is further ORDERED Defendants Countermotion for Summary Judgment (ECF No. 41) is DENIED.

Dated: This 25th day of March, 2013.

_____
ROBERT C. JONES

8